*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BRENDA JEAN STEWART,

UNPUBLISHED
January 28, 2021

Plaintiff-Appellee,

v

No. 350889
Barry Circuit Court
LC No. 2018-000588-DO

TIMOTHY JAMES STEWART,

Defendant-Appellant.

Before: SHAPIRO, P.J., and SAWYER and BECKERING, JJ.

PER CURIAM.

Defendant, Timothy James Stewart, appeals as of right the divorce judgment that dissolved his marriage with plaintiff, Brenda Jean Stewart. For the reasons stated in this opinion, we affirm in part, reverse in part, and remand.

After approximately 28 years of marriage, plaintiff filed for divorce and moved for spousal support. Defendant objected to providing plaintiff spousal support. At trial, both defendant and plaintiff testified extensively about the issues that contributed to the breakdown of their marriage, which included domestic violence and extramarital affairs. Additionally, both defendant and plaintiff called their own expert witnesses to testify regarding the value of their businesses, Mold Medic and Argon Properties, and defendant's income for spousal support. Defendant objected to plaintiff's witness, Jim Gorman, testifying at trial, contending that plaintiff failed to disclose that she was calling Gorman as an expert witness until 10 days before trial. The trial court overruled defendant's objection and permitted Gorman to testify.

Gorman testified that he did not perform his own valuation of the businesses. Instead, he reviewed the report that defendant's expert witness, Michelle Gallagher, prepared along with some of the supporting materials. Gorman testified about several issues that he had with Gallagher's valuation findings. Additionally, Gorman valued Mold Medic at $1,088,168 and Argon Properties at $172,000, and he concluded that the trial court should set defendant's income for spousal support at approximately $240,000. Gallagher testified that $160,000 was an appropriate amount at which to set defendant's income. Additionally, she valued Mold Medic at $630,000 and Argon Properties at $28,000. The trial court found that Mold Medic and Argon Properties had the combined value of $745,000, and given that valuation, the trial court determined that defendant's income for

spousal support was $190,000 to $200,000. Regarding spousal support, the trial court ordered defendant to pay plaintiff $4,000 a month. Defendant moved to amend the judgment, for a new trial, and for reconsideration. The trial court held a hearing and denied defendant's motion. Defendant now appeals.

Defendant argues that the trial court abused its discretion by permitting Gorman to testify. We agree.

"[A] trial court's determination of the qualifications of an expert witness is reviewed for an abuse of discretion." *Albro v Drayer*, 303 Mich App 758, 760; 846 NW2d 70 (2014). This Court also reviews for an abuse of discretion the trial court's decision to permit a witness to testify who was not disclosed during the discovery process. *Leavitt v Monaco Coach Corp*, 241 Mich App 288, 296; 616 NW2d 175 (2000). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Woodington v Shokoohi*, 288 Mich App 352, 355; 792 NW2d 63 (2010).

Defendant contends that the trial court abused its discretion by permitting Gorman to testify because plaintiff failed to disclose Gorman as an expert witness until 10 days before trial.

MCR 2.302(B)(4)(a)(*i*) permits a party to discover "facts known and opinions held by experts" through interrogatories. Specifically, a party may request the other

> party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter about which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. [MCR 2.302(B)(4)(a)(*i*).]

Additionally, a party must "supplement or correct its disclosure or response" to an interrogatory "*in a timely manner* if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ." MCR 2.302(E)(1)(a)(*i*) (emphasis added). "If a party fails to provide information or identify a witness as required by MCR 2.302(A) or (E), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." MCR 2.313(C)(1).

Additionally, MCR 2.401(B)(2)(a)(*vi*) permits the trial court to establish the time by which the parties must exchange their witness lists. "No later than the time directed by the court under subrule (B)(2)(a), the parties shall file and serve witness lists." MCR 2.401(I)(1). "The court may order that any witness not listed in accordance with this rule will be prohibited from testifying at trial except upon good cause shown." MCR 2.401(I)(2). Trial courts should consider the following factors when determining whether to sanction a party for failing to timely disclose witnesses:

> (1) whether the violation was wilful or accidental; (2) the party's history of refusing to comply with discovery requests (or refusal to disclose witnesses); (3) the prejudice to the defendant; (4) actual notice to the defendant of the witness and the length of time prior to trial that the defendant received such actual notice;

(5) whether there exists a history of plaintiff's engaging in deliberate delay; (6) the degree of compliance by the plaintiff with other provisions of the court's order; (7) an attempt by the plaintiff to timely cure the defect[;] and (8) whether a lesser sanction would better serve the interests of justice. This list should not be considered exhaustive. [*Duray Dev, LLC v Perrin*, 288 Mich App 143, 165; 792 NW2d 749 (2010) (quotation marks and citation omitted; alteration in original).]

In this case, the trial court abused its discretion by failing to sanction plaintiff for failing to disclose Gorman as an expert witness until 10 days before trial. There is no indication in the lower court record or on appeal whether plaintiff purposely violated the trial court's trial management order by not listing Gorman on her witness list. However, there is also no indication that plaintiff moved in the trial court to show good cause why she did not list Gorman as an expert witness as required by the trial management order. Additionally, it is unclear why plaintiff waited to supplement her response to defendant's interrogatories with Gorman's information shortly before trial if she had been working with him throughout pretrial proceedings as she claims. Plaintiff's delay in disclosing Gorman as her expert witness meant that she disclosed his identification three months after she was required to.

It is also likely that plaintiff's delay in identifying Gorman as an expert witness prejudiced defendant. The record is unclear as to whether defendant was aware of Gorman during pretrial proceedings. Plaintiff claimed at the bench trial that Gorman "was disclosed in discovery." Additionally, in response to defendant's motion to amend the judgment, for a new trial, and reconsideration, plaintiff contended that she notified defendant months before trial of Gorman's assistance with this case. However, the record does not support plaintiff's claims, and regardless, there is no indication that defendant knew that plaintiff was going to call Gorman as an expert witness until plaintiff notified him 10 days before trial. Additionally, there is no indication that defendant was aware before trial of Gorman's specific testimony or Exhibit 42, which was Gorman's recalculation of Gallagher's valuation. Furthermore, the record indicates that the trial court relied on Gorman's testimony to some extent, especially in determining the valuation of the parties' businesses and defendant's income for spousal support. Finally, the record indicates that when defendant challenged Gorman's testimony at trial, plaintiff's counsel falsely represented that Gorman was listed as a witness on plaintiff's witness list.

Therefore, we conclude that the trial court abused its discretion by permitting Gorman to testify at trial as an expert witness and the error was not harmless. We remand this case so that the trial court may redetermine the valuation of Mold Medic and Argon Properties using only admissible evidence.[1]

Defendant argues next that the trial court failed to make the necessary findings regarding spousal support. We agree.

This Court reviews for an abuse of discretion a trial court's decision to award spousal support. *Gates v Gates*, 256 Mich App 420, 432; 664 NW2d 231 (2003). "[W]e review the trial

---

[1] Given our ruling, we need not address whether Gorman was qualified to testify under MRE 702 nor the adequacy of the trial court's findings as to the value of the businesses.

court's findings of fact concerning spousal support for clear error." *Id*. "The findings are presumptively correct, and the burden is on the appellant to show clear error." *Id*. "A finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made." *Id*. at 432-433. "If the trial court's findings are not clearly erroneous, [we] must then decide whether the dispositional ruling was fair and equitable in light of the facts." *Id*. at 433 (quotation marks and citation omitted; alteration in original). "The trial court's decision regarding spousal support must be affirmed unless we are firmly convinced that it was inequitable." *Id*.

"The object in awarding spousal support is to balance the incomes and needs of the parties so that neither will be impoverished, and spousal support is to be based on what is just and reasonable under the circumstances of the case." *Richards v Richards*, 310 Mich App 683, 691; 874 NW2d 704 (2015). The following factors should be weighed by the trial court when considering an award of spousal support:

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. [*Id*. (quotation marks and citation omitted).]

"The trial court should make specific factual findings regarding the factors that are relevant to the particular case." *Loutts v Loutts*, 298 Mich App 21, 32; 826 NW2d 152 (2012) (quotation marks and citation omitted).

In this case, the trial court awarded plaintiff $4,000 in spousal support. However, the trial court's findings regarding the spousal-support award were insufficient. The trial court stated that it evaluated the spousal-support factors to determine the spousal-support award in this case, but it failed to expressly place its findings on the record. For example, defendant claims that the trial court determined spousal support solely on the basis of fault. However, a review of the trial court's findings makes it unclear whether or how much the trial court considered fault when calculating spousal support. Before stating its findings regarding the division of marital assets and the spousal-support award, the trial court clearly stated that it found defendant at fault for the divorce. However, right before issuing the spousal-support award, the trial court simply stated that it had the Friend of the Court produce different spousal-support amounts using different income ranges imputed to defendant and plaintiff and that it considered the property division and the valuation of the businesses.

Additionally, the trial court failed to explicitly address other relevant factors. For example, the trial court failed to specify the income that it imputed to plaintiff even though there was significant testimony in the record regarding plaintiff's potential income. Additionally, it failed to expressly consider the length of the parties' marriage, the age of the parties, plaintiff's health, plaintiff's ability to work, the parties' prior standard of living, and the parties' needs, even though there was evidence in the record regarding each of those factors as well. The trial court also failed

to explicitly consider defendant's ability to pay alimony, especially in consideration of its ruling regarding the division of marital property. Therefore, we remand this case to the trial court so that the trial court can consider the relevant factors and make specific findings that justify the award of spousal support.

Defendant also contends that the trial court abused its discretion by limiting the amount of time that the parties had to present their evidence at trial. We disagree.

"We review unpreserved issues for plain error." *Demski v Petlick*, 309 Mich App 404, 426-427; 873 NW2d 596 (2015). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 427 (quotation marks and citation omitted).

Generally, the trial court controls the presentation of evidence at trial. For example, MRE 611(a) provides as follows:

> The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

In this case, the record indicates that the trial court specifically limited the trial to one day because that was what the parties wanted. See *Alpha Capital Mgt, Inc v Rentenbach*, 287 Mich App 589, 618 n 12; 792 NW2d 344 (2010). At the beginning of the trial, the trial court stated that after reviewing the pleadings and discussing this issue with court staff, it understood that the general intention of the parties was to have a one-day trial. The trial court then specifically asked the parties their "intention" regarding the length of the trial. Defense counsel simply replied that he would like the time allocated for trial to be equally divided between the parties. Additionally, the trial court specifically asked whether one day would be enough, to which defense counsel responded, "I believe so, Your Honor." Furthermore, plaintiff claimed that both parties "prepared for trial based on the fact that [they] had knowledge that [they] had one day" and noted that the parties had already stipulated to the admission of most exhibits. Therefore, the trial court did not abuse its discretion by limiting the trial to one day.

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. No costs, neither party having prevailed in full.

/s/ Douglas B. Shapiro
/s/ David H. Sawyer
/s/ Jane M. Beckering